# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

MARIA MIRANDA-OLIVARES,

      Plaintiff,

                            Case No. 3:12-cv-02317-ST

  v.

                            **OPINION AND ORDER**

CLACKAMAS COUNTY,[1]

      Defendant.

**STEWART, Magistrate Judge:**

## <u>INTRODUCTION</u>

This case involves the detention of plaintiff, Maria Miranda-Olivares ("Miranda-Olivares"), in the Clackamas County Jail ("Jail") based solely on a federal immigration detainer (Form I-247) issued by the United States Immigration and Customs Enforcement ("ICE"), an agency of the Department of Homeland Security ("DHS"). The detainer indicated that ICE had initiated an investigation to determine whether Miranda-Olivares was subject to removal from the United States. Miranda-Olivares alleges that by keeping her in custody based on that ICE detainer, Clackamas County ("County") violated 42 USC § 1983 by depriving her of liberty with due process under the Fourteenth Amendment (First Claim) and her right to be free from

---

[1] Another defendant, Craig Roberts, Sheriff of Clackamas County, was named as a defendant in the initial Complaint, but deleted in the First Amended Complaint (docket #6).

unreasonable seizure under the Fourth Amendment (Second Claim), and also falsely imprisoned her in violation of Oregon law (Third Claim).

This court has jurisdiction pursuant to 28 USC § 1331. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c) (docket #10).

Because the material facts are undisputed, the County has filed a Motion for Summary Judgment (docket #17) on liability for all claims, and Miranda-Olivares has filed a cross Motion for Partial Summary Judgment (docket #23) on her § 1983 claims. For the reasons set forth below, summary judgment is granted to Miranda-Olivares as to liability on the Second Claim and granted to the County on the First and Third Claims.

## UNDISPUTED FACTS

On March 14, 2012, Miranda-Olivares was arrested for violating a domestic violence restraining order and booked into the Jail. Eby Decl. (docket #19), ¶ 2 & Ex. 101. Miranda-Olivares does not challenge the lawfulness of that arrest.

The County generally does not know a person's immigration status and did not know Miranda-Olivares's immigration status any at time during her incarceration. Henretty Decl. (docket #27), Ex. 6 ("Eby Depo."), pp. 41-42, & Ex. 8, p. 2. However, it has a policy of notifying ICE when a foreign–born person is brought to the Jail on a warrant or probable cause charge. *Id*, Ex. 3, p. 2, & Ex. 5, p. 2. The County does not request that ICE issue an immigration detainer against a person. *Id*, Ex. 4, p. 6.

Early the next morning on March 15, 2012, the Jail received an immigration detainer (Form I-247) issued by ICE for Miranda-Olivares. *Id*, Ex. 2; Eby Decl., ¶¶ 4-5. The top of that ICE detainer contains the following caption: "MAINTAIN CUSTODY OF ALIEN FOR A

PERIOD NOT TO EXCEED 48 HOURS." Eby Decl., Ex. 102. After naming and describing

Miranda-Olivares, it states that DHS "has taken the following action related to" her with an "X"

marked in the first of four boxes[2] indicating that DHS had "initiated an investigation to

determine whether [Miranda-Olivares] is subject to removal from the United States." *Id.* It

states no basis for the investigation and was not accompanied by an arrest warrant or any other

charging document. Henretty Decl., Ex. 8, p. 2. The middle of that ICE detainer states "IT IS

REQUESTED THAT YOU," followed by six boxes with an "X" marked in the two following

boxes:

> Maintain custody of the subject for a period **NOT TO EXCEED 48 HOURS**, excluding Saturdays, Sundays, and holidays, beyond the time when the subject would have otherwise been released from your custody to allow DHS to take custody of the subject. This request flows from federal regulation 8 C.F.R. § 287.7, which provides that a law enforcement agency "shall maintain custody of an alien" once a detainer has been issued by DHS. **You are not authorized to hold the subject beyond these 48 hours.** As early as possible prior to the time you otherwise would release the subject, please notify the Department . . . .
> . . .
> Provide a copy to the subject of this detainer . . . .

Eby Decl., Ex. 102 (emphasis in original).

When the Jail receives an ICE detainer, it holds the person subject to the detainer for up

to 48 hours, not including Saturdays, Sundays, and holidays, beyond the time when the person

would otherwise be released, even if the person posts bail. Henretty Decl., Ex. 7 ("Roberts

Depo."), p. 10; Eby Depo., pp. 22-23. The Jail's practice is the same whether or not the ICE

detainer is accompanied by an arrest warrant, statement of probable cause, or removal or

deportation order. Eby Depo., pp. 17-18.

---

[2] The other three unchecked boxes indicate that DHS has "[i]nitiated removal proceedings and served a Notice to Appear or other charging document," "[s]erved a warrant of arrest for removal proceedings," or "[o]btained an order of deportation or removal from the United States for this person." Eby Decl., Ex. 102.

Although Miranda-Olivares became aware of the ICE detainer the day it was issued, she was not provided a copy of it while she was incarcerated. Miranda-Olivares Decl. (docket #25), ¶ 8; Ceicko Decl. (docket #20), Ex. 105 ("Miranda-Olivares Depo."), pp. 25, 29.

That same day, Miranda-Olivares was arraigned and charged with two counts of contempt of court (ORS 33.065),[3] and the judge set bail at $5,000.00. Answer (docket #7), ¶ 10; Eby Decl., ¶ 7; Henretty Decl., Ex. 9. In order to post bail, Miranda-Olivares was required to pay $500.00. Henretty Decl., Ex. 8, p. 5. However, the Jail holds an individual who is subject to an ICE detainer in custody, even if the underlying state criminal charges are resolved or bail is posted. Eby Depo., pp. 22-23, 41. Between March 16 and March 30, 2012, the Jail told Miranda-Olivares's sister, Laura Miranda, approximately four or five times that even if bail was posted, Miranda-Olivares would not be released due to the ICE detainer. Laura Miranda Decl. (docket #26), ¶¶ 4, 6; Henretty Decl., Ex. 8, p. 4. On March 16, 2012, Laura Miranda informed Miranda-Olivares by telephone that she would not be released if she posted bail because of the ICE detainer. Miranda-Olivares Decl., ¶¶ 5-6; Laura Miranda Decl., ¶¶ 3, 5; Henretty Decl., Ex. 10 (Progress Notes, March 16, 2012). On or about March 28, 2012, a sheriff's deputy told Miranda-Olivares directly that she would not be released if she posted bail because of the Jail policy relating to ICE detainers. Miranda-Olivares Decl., ¶ 7; Henretty Decl., Ex. 4, p. 3 & Ex. 10, p. 2. Miranda-Olivares's family was willing and able to pay the $500.00 bail, but did not do so because of the statements by Jail officials. Laura Miranda Decl., ¶ 8.

Miranda-Olivares remained in custody at the Jail on the state charges until March 29, 2012, when she pled guilty to one of the charges and was sentenced to 48 hours in jail with credit

---

[3] Restraining orders under the Abuse Prevention Act, ORS 107.700 *et seq*, are enforced through contempt proceedings under ORS Chapter 33. *See State ex rel. Hathaway v. Hart*, 300 Or 231, 236-37 (1985). Contempt of court is not a "crime" in Oregon. *State v. Reynolds*, 239 Or App 313, 315-16 (2010). No longer referred to as a civil or criminal charge, contempt is "categorized by the sanction sought, either remedial or punitive." *Bachman v. Bachman*, 171 Or App 665, 673 n8 (2000); *see* ORS 33.045. Charges brought under ORS 33.065 involve punitive sanctions.

for time served and probation.  Eby Decl. ¶¶ 8, 10 & Ex. 103.  Consequently, at about 1:30 pm

on March 29, 2012, Miranda-Olivares would have been released from the Jail but for the ICE

detainer.  *Id*, ¶ 12.  Instead, the County held Miranda-Olivares in custody for another 19 hours

until about 8:30 am on March 30, 2012, when she was released from the Jail to the custody of

DHS agents.  *Id*, ¶ 13.

While in custody at the Jail, Miranda-Olivares did not file a petition for writ of habeas

corpus, file a Jail administrative grievance, or contact DHS regarding the issuance of the ICE

detainer.  *Id*, ¶ 16; Miranda-Olivares Depo., pp. 29-30.

## DISCUSSION

Miranda-Olivares challenges her confinement by the County from March 15 through

March 30, 2012, and specifically the County's custom and practice of incarcerating persons who

are subject to ICE detainers after the lawful custody on state charges has ended.  The County

responds that federal law requires this custom and practice because ICE detainers (Form I-247)

are issued pursuant to 28 CFR § 287.7 which, it its view, mandates the detention of a suspected

alien by a local law enforcement agency for up to 48 hours.  That regulation contains the

following two relevant subsections:

> (a) Detainers in general.  Detainers are issued pursuant to sections 236 and
> 287 of the Act and this chapter 1.  Any authorized immigration officer
> may at any time issue a Form I–247, Immigration Detainer–Notice of
> Action, to any other Federal, State, or local law enforcement agency.  A
> detainer serves to advise another law enforcement agency that the
> Department seeks custody of an alien presently in the custody of that
> agency, for the purpose of arresting and removing the alien.  The detainer
> is a request that such agency advise the Department, prior to release of the
> alien, in order for the Department to arrange to assume custody, in
> situations   when   gaining   immediate   physical   custody   is   either
> impracticable or impossible.
> . . .

///

///

(d) Temporary detention at Department request. Upon a determination by the Department to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department.

However, as discussed below, neither 28 CFR § 287.7 nor the form of ICE detainer at issue here are mandatory. As a result, the County violated Miranda-Olivares's Fourth Amendment rights.

## I. § 1983 Claims

### A. Legal Standard

Government conduct under the color of law that deprives a person of a constitutionally-protected interest violates 42 USC § 1983. *Haygood v. Younger*, 769 F2d 1350, 1354 (9th Cir 1985). Municipalities are "persons" subject to damages liability under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 US 658 (1978); *Gillette v. Delmore*, 979 F2d 1342, 1346 (9th Cir 1992). A municipality's liability under § 1983 is established if the constitutional violation was committed pursuant to a formal governmental policy or a "long standing practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." *Gillette*, 979 F2d at 1346-47.

Miranda-Olivares does not challenge an express policy adopted by the County. *See City of Oklahoma City v. Tuttle*, 471 US 808, 823 (1985) ("the word 'policy' generally implies a course of action consciously chosen from among various alternatives"). Instead, she challenges the County's undisputed practice or custom of detaining a person based entirely on an ICE detainer even after that person is entitled to release from custody by posting bail or resolving the criminal charges. Based on its interpretation of the language in the ICE detainer and 8 CFR § 287.7, the County argues that its practice or custom does not violate either the Fourth or

Fourteenth Amendments because it is mandated by federal law. However, as discussed below, the County misinterprets the nature of the ICE detainer at issue here.

### B.    <u>ICE Detainer is Not Mandatory</u>

The County's case relies heavily on the theory that a municipality cannot be liable under *Monell* based on a custom and practice of complying with a mandatory federal law. In support, it points to several decisions from the federal circuits holding that a municipality is not subject to *Monell* liability as a result of enforcing mandatory state law. *See, e.g.*, *Vives v. City of N.Y.*, 524 F3d 346, 351-52 (2nd Cir 2008) (summarizing the circuit decisions). These courts reason that a municipality's decision to honor the obligation to enforce a mandatory state law is not a conscious choice. *See id* at 352-53, citing *Tuttle*, 471 US at 823 ("a policy will ordinarily be the result of a conscious choice"). This conclusion reflects Supreme Court precedent that "municipal liability under § 1983 attaches where — and only where — a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 US 469, 483 (1986), citing *Tuttle*, 471 US at 823.

Although these cases address only state law, their reasoning appears to apply if a municipality had an analogous obligation to follow federal law. Assuming, as the County argues, that the Immigration and Nationality Act ("INA"), 8 USC §§ 1101, *et seq*, occupies and preempts the field of detaining and removing illegal aliens,[4] then the INA would bar the County from exercising any discretion on the subject. *See English v. Gen. Elec. Co.*, 496 US 72, 79

---

[4] The County argues that its response to the ICE detainer is constitutionally preempted, citing *Valle del Sol Inc. v. Whiting*, 732 F3d 1006 (9th Cir 2013). *Whiting* is not applicable because it involved conflict preemption of an Arizona state statute that stood as an obstacle to the accomplishment and execution of the full purpose of federal immigration law. *Id* at 1026. In contrast, the County relies on field preemption based on the implied "federal power to determine immigration policy." *Arizona v. United States*, 132 S Ct 2492, 2498 (2012). Had ICE issued an order of removal or deportation for Miranda-Olivares, then a refusal by the County to comply could be constitutionally preempted. That is not the situation here, however, where the ICE detainer states only that DHS has "[i]nitiated an investigation to determine whether this person is subject to removal from the United States." Eby Decl., Ex. 102.

(1990) (citation omitted) (under field preemption a "scheme of federal regulation [may be] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it"). Under that scenario, enforcing a federal immigration policy that mandates cooperation from local law enforcement would require no more conscious decision-making than would be involved in enforcing a mandatory state law. However, as explained below, the federal regulation in question, 8 CFR § 287.7, does not mandate detention by local law enforcement, but only requests compliance in detaining suspected aliens. As the Second Circuit posited, albeit without deciding, "if a municipality decides to enforce a statute that it is authorized, but not required, to enforce, it may have created a municipal policy," subjecting it to *Monell* liability. *Vives*, 524 F3d at 353.[5]

In this case, any injury Miranda-Olivares suffered was the direct result of the County exercising its custom and practice to hold her beyond the date she was eligible for release based solely on the ICE detainer. The County argues that it had no choice because the ICE detainer mandated her detention pursuant to 8 CFR § 287.7. In particular, it points to the directive in the caption ("MAINTAIN CUSTODY OF ALIEN FOR A PERIOD NOT TO EXCEED 48 HOURS") and the body of the "request" stating that it "flows from federal regulation 8 C.F.R. § 287.7, which provides that a law enforcement agency 'shall maintain custody of an alien' once a detainer has been issued by DHS." The County interprets the use of "shall" as extinguishing any discretion by a local law enforcement agency once ICE issues the detainer.

The County finds support for its interpretation of the ICE detainer and regulation in several district court cases. However, those cases are not persuasive. First, some of those cases

---

[5] Of course, even if a municipality enforces a mandatory, but unconstitutional, state or federal law, *Monell* liability may attach even though the municipality does not know that the statute is unconstitutional. *Id* at 350, citing *Owen v. City of Independence, Mo.*, 445 US 622, 650, 657 (1980) (denying municipalities the good-faith defense).

fail to conduct any textual analysis. *See Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma*, 644 F Supp2d 1177, 1206 (ND Cal 2009); *Sorcia v. Smith*, C/A No. 9:10-2827-JFA-BM, 2011 WL 5877026, at *1 (DSC Nov. 22, 2011).

Second, the majority of the cases cited by the County rely on the statutory interpretation of *Galarza v. Szalczyk*, 10-CV-06815, 2012 WL 1080020, at *19 (ED Pa Mar. 30, 2012). *See Davila v. N. Reg'l Joint Police Bd.*, 2013 WL 5724939, at **12-13 (WD Pa 2013) (finding the regulation to be a "directive" and then stating that "[t]he Court is not aware of, nor is the plaintiff able to cite to, a case that has held a local government entity's decision to rely on and comply with this federal regulation to be unconstitutional on its face"); *Rios-Quiroz v. Williamson Cnty., Tenn.*, 3-11-1168, 2012 WL 3945354, at *4 (MD Tenn Sept. 10, 2012) ("The subsection says 'shall maintain,' which indicates an obligation to maintain custody. For this reason, the Court finds that the regulation is mandatory."); *Ramirez-Mendoza v. Maury Cnty., Tenn.*, 1:12-CV-00014, 2013 WL 298124, at *8 (MD Tenn Jan. 25, 2013) (relying on the *Rios-Quiroz* analysis to hold "the Defendant was not required to make an independent probable cause determination of Plaintiff's immigration status"). However, the Third Circuit recently reversed *Galarza* and interpreted the regulation as not imposing a mandatory obligation on local law enforcement agencies to detain suspected aliens subject to an INS detainer. *Galarza v. Szalczyk, et al*, No. 12-3991, 2014 WL 815127 (3rd Cir Mar. 4, 2014). The regulation contains two subsections. Subsection (a) of 8 CFR § 287.7 describes the purpose of a detainer "to advise another law enforcement agency" that DHS seeks custody and provides that it is "a request" to advise DHS "prior to release of the alien." The phrase "shall maintain custody of an alien" is found only in subsection (d) regarding the length of detention. The Third Circuit concluded that "it is hard to

read the use of the word 'shall' in the timing section [(d)] to change the nature of the entire regulation." *Id* at *4.

Despite the Third Circuit's analysis, the County argues that any interpretation that provides local law enforcement with discretion to refuse detention upon receipt of an ICE detainer violates the maxim requiring the court to give meaning to all provisions of the statute. However, in the present context, this maxim cuts both ways. Interpreting "shall" in subsection (d) to require local law enforcement to detain a suspected alien would render the repeated use of the word "request" meaningless, while interpreting "request" in subsection (a) to apply to all the instructions given to local law enforcement would eviscerate the common meaning of "shall." When read as a whole, only one interpretation of the statute is reasonable. If both "shall" and "request" are given meaning, then a detainer issued by ICE under subsection (b) is a "request" that local law enforcement voluntarily hold suspected aliens up to 48 hours. At least two courts have similarly reconciled subsections (a) and (d). *See Morales v. Chadbourne, et al*, C.A. No. 12-301-M, 2014 WL 554478, at *17 (D RI Feb. 12, 2014) ("Subsection (d) . . . titled 'Temporary detention at Department request,' comes only after subsection (a)'s 'general' detainer definition as a 'request.'"); *Buquer v. City of Indianapolis*, 1:11-CV-00708-SEB, 2013 WL 1332158, at *3 (SD Ind Mar. 28, 2013) ("A detainer is not a criminal warrant, but rather a voluntary request" that "automatically expires at the end of the 48-hour period.").

An even more fundamental principle of statutory interpretation favors Miranda-Olivares. "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fl. Gulf Coast Bldg. & Const. Trades Council*, 485 US 568, 575 (1988) (citation omitted). As recognized by the

Third Circuit, the Tenth Amendment requires that 8 CFR § 287.7 be deemed a request. *Galarza*, 2014 WL 815127, at *7. It is settled that any federal action that commandeers "the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program 'upsets the usual constitutional balance of federal and state powers.'" *New York v. United States*, 505 US 144, 170 (1992), citing *Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.*, 452 US 264, 288 (1981). Consistent with this principle, the Supreme Court has described the only specific reference to detainers in the INA, 8 USC § 1367(d), as "requests for information about when an alien will be released from their custody" and as one way state officials may "assist" the federal government in the detention and removal of aliens. *Arizona*, 132 S Ct at 2507, citing 8 USC § 1357(d). Thus, a conclusion that Congress intended detainers as orders for municipalities to enforce a federal regulatory scheme on behalf of INS would raise potential violations of the anti-commandeering principle.

A non-mandatory interpretation is also consistent with the general interpretation of the character of INS detainers in other contexts. No federal circuit court "has ever described ICE detainers as anything but requests." *Galarza*, 2014 WL 815127, at *5 (summarizing the treatment of INS detainers in the majority of circuits). For habeas corpus purposes, the Ninth Circuit has noted that "[t]he detainer letter itself merely advises that an investigation has been commenced and that an order to show cause and warrant will be issued when available." *Garcia v. Taylor*, 40 F3d 299, 303 (9th Cir 1994), *superseded on other grounds by* 8 USC § 1252(i). Specifically, it held that the INS detainer letter "does not limit [Bureau of Prisons] discretion." *Id.* Therefore, even a fellow federal agency "does not *hold* the prisoner for the INS." *Id* at 304 (emphasis in original). Regardless of the context, the Ninth Circuit considers the language of the detainer letter to be unambiguous:

> We do not see how the detainer document can be read in any other way. It simply expresses interest and says that the INS will (we suppose, if it honestly can) obtain charging documents in due course. We see nothing in the detainer letter that would allow, much less compel, the warden to do anything but release [a detainee] at the end of his term of imprisonment.

*Id*.

The County seeks to distinguish *Garcia* because it interprets an unidentified detainer letter (not necessarily Form I-247) and not 8 CFR § 287.7. However, the language of the relevant regulation giving INS authority to issue detainer letters has not substantively changed since the Ninth Circuit decided *Garcia*. *See* 53 Fed Reg 9281 (Mar 22, 1988) (containing 8 CFR § 242.2(a)(4) and § 287.7(a)(4)).[6] Moreover, pre-2010 ICE detainers contained the word "require" that does not appear anywhere in the current version. *Galarza*, 2014 WL 815127, at *7. In any event, *Garcia* represents the only Ninth Circuit interpretation of congressional intent underlying the authorization of immigration detainers.

The County also posits that consulting nonjudicial interpretations of 8 CFR § 287.7 is unnecessary because the text is unambiguous. That assertion is clearly repudiated by the contradictory judicial interpretations of the text. To resolve the ambiguity in the text, it is prudent to follow the lead of *Galarza* and consider policy and litigation statements made by ICE, the United States Department of Justice ("DOJ") on behalf of DHS, and state Attorney Generals. *See Skidmore v. Swift & Co.*, 323 US 134, 140 (1944) ("the rulings, interpretations and opinions of [the federal agency], while not controlling upon the courts by reason of their authority, do

---

[6] § 287.7 Detainer Provisions under section 287(d)(3) of the Act.

(a) Detainers in general. (1) Only an immigration officer as defined in section 101(a)(18) of the Act, or § 103.1(q) of this chapter is authorized to issue a detainer. Detainers may only be issued in the case of an alien who is amenable to exclusion or deportation proceedings under any provision of law; however, no detainer shall be issued in the case of an alien who is in the United States without legal authority and is eligible to apply, or has applied, for legalization or special agricultural worker status under the provisions of section 245A or 210 of the Act, unless the Service has denied, or has issued a notice of intent to deny, the benefit applied for.
. . .
(4) Temporary detention at Service request. Upon a determination by the Service to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed forty-eight hours, in order to permit assumption of custody by the Service.

constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.").

Both internally and publically, ICE defines Form I-247 as "a notice that ICE issues to Federal, State, and local law enforcement agencies (LEAs) to inform the LEA that ICE intends to assume custody of an individual in the LEA's custody," thereby serving the purpose of "request[ing] that the LEA maintain custody of an alien who would otherwise be released for a period not to exceed 48 hours." Henretty Decl., Ex. 1 (ICE website) & Ex. 14 (ICE Enforcement Interim Policy Number 10074.1). Similarly, in response to a lawsuit, the DOJ's Office of Immigration Litigation denied the allegations "that the regulations cited on the I-247 form, which is a legally authorized request upon which a state or local law enforcement agency permissibly may rely, imposes a requirement upon the LEA to detain the individual on ICE's behalf." *Id*, Ex. 15, p. 3. Later in that same suit, the DOJ argued that that an ICE detainer does not violate the Tenth Amendment because it is a "legally authorized request upon which a state or local law enforcement agency may rely. It does not conscript state or local law enforcement to take any action or administer any program." *Id*, Ex. 16, p. 2 (*Moreno v. Napolitano*, 11-cv-5452 (ND Ill Aug. 11, 2011) (date of case filing)).

In addition, both the Attorney Generals of Maryland and California have issued policy statements interpreting 8 CFR§ 287.7 and defining state and local law enforcement's duty under Form I-247. On December 4, 2012, the California Attorney General published his opinion that ICE detainers were "merely requests enforceable *at the discretion of the agency* holding the individual arrestee" based on the non-mandatory language used in the Form I-247 and the Tenth Amendment. Reply (docket #30), Ex. 3, p. 2. On October 31, 2013, again relying on the Tenth Amendment, the Maryland Attorney General stated "it is my view, that the mandatory meaning

of the term 'shall' should be limited to the length of the stay" and "that the best reading of the regulation, supported by the position of ICE, allows state and local jurisdictions to exercise discretion when determining how to respond to individual detainers." *Id*, Ex. 2, pp. 2-3.

For these reasons, this court concludes that 8 CFR § 287.7 does not require LEAs to detain suspected aliens upon receipt of a Form I-247 from ICE and that the Jail was at liberty to refuse ICE's request to detain Miranda-Olivares if that detention violated her constitutional rights. Accordingly, the County cannot avail itself of the defense that its practice and custom did not cause the allegedly unlawful detention.

### C. Fourteenth Amendment Claim (First Claim)

As clarified at the hearing on the motions**,** the First Claim alleges a violation of Miranda-Olivares's substantive, not procedural, due process rights under the Fourteenth Amendment.

"Substantive due process refers to certain actions that the government may not engage in, no matter how many procedural safeguards it employs." *Blaylock v. Schwinden*, 862 F2d 1352, 1354 (9th Cir 1988) (citation omitted). Miranda-Olivares easily satisfies the threshold burden of showing "a government deprivation of life, liberty, or property." *See Brittain v. Hansen*, 451 F3d 982, 991 (9th Cir 2006). Under her allegations of extended detainment after resolution of her state charges and without a determination of probable cause to hold her under the detainer, Miranda-Olivares held a liberty interest in being free from incarceration. *See Oviatt By and Through Waugh v. Pearce*, 954 F2d 1470, 1474 (9th Cir 1992), citing *Baker v. McCollan*, 443 US 137, 144 (1979) (finding Oregon statutes created a protected liberty interest in freedom from incarceration without speedy pretrial procedures).

However, to establish a violation of substantive due process, a plaintiff must also prove that the challenged government action was "clearly arbitrary and unreasonable, having no

substantial relation to the public health, safety, morals, or general welfare." *Village of Euclid v. Ambler Realty Co.*, 272 US 365, 395 (1926); *Patel v. Penman*, 103 F3d 868, 874 (9th Cir 1996) (citation omitted), *overruled on other grounds by Nitco Holding Corp. v. Boujikian*, 491 F3d 1086, 1089 (9th Cir 2007). The standard is whether the challenged conduct "shocks the conscience," under which "only the most egregious executive action can be said to be 'arbitrary' in the constitutional sense." *County of Sacramento v. Lewis*, 523 US 833, 846 (1998), *abrogated on other grounds by Saucier v. Katz*, 533 US 194 (2001); *see also Sylvia Landfield Trust v. City of L.A.*, 729 F3d 1189, 1195 (9th Cir 2013) (citation omitted).

In the Ninth Circuit, government action taken as the result of "reasonable, though possible erroneous, legal interpretation" does not rise to the level of egregious conduct. *Brittain*, 451 F3d at 996. "We do not require police officers to act as legal experts to avoid violating the Constitution." *Id.* Although this court concludes that the ICE detainer is not mandatory, the County could have reasonably reached a different conclusion. As Miranda-Olivares points out, the County apparently did not seek legal advice from counsel or guidance from ICE before routinely detaining persons upon receiving an ICE detainer. Had it done so, however, it still may have concluded that the ICE detainer is mandatory, as have some district courts. Even though the County's interpretation is wrong, it is not necessarily unreasonable. Because the County's compliance with a facially valid ICE detainer issued for the Miranda-Olivares does not shock the conscience, summary judgment is granted for the County on the First Claim.

### D.   Fourth Amendment Claim (Second Claim)

Miranda-Olivares contends that the County violated her Fourth Amendment rights both by the refusing to release her during the two weeks when she could have posted bail and by continuing to incarcerate her for 19 hours after her release from the state charges.

The County argues that Miranda-Olivares's protection under the Fourth Amendment ended after her arraignment. According to the County, the Fourth Amendment analysis only applies to allegations that an individual was deprived of liberty prior to the government's determination of legal custody. In support, it cites the statement by the Ninth Circuit in *Pierce v. Multnomah Cnty.*, 76 F3d 1032, 1043 (9th Cir 1996), that "the Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest." *Pierce*, 76 F3d at 1043.

The County misinterprets Miranda-Olivares's claim. The seizures that allegedly violated her Fourth Amendment rights were not a continuation of her initial arrest, but new seizures independent of the initial finding of probable cause for violating state law. By continuation of her detention based on the ICE detainer embarked Miranda-Olivares on a subsequent and new "prolonged warrantless, post-arrest, pre-arraignment custody." *See Pierce*, 76 F3d at 1042-43, citing *Austin v. Hamilton*, 945 F2d 1155, 1158-60 (10th Cir 1991) (noting that "the custodial continuum run[s] through initial arrest or seizure, post-arrest but pre-charge or pre-hearing custody, pretrial detention, and post-conviction incarceration"). In this context, the term "re-seizure" is a misnomer. The alleged violations are more aptly titled "subsequent seizures" of a former detainee.

This case is similar to *Vanke v. Block*, Case No. CV 98-4111 DDP (SHx), 1998 US Dist LEXIS 23488 (CD Cal 1998), in which the Los Angeles County Jail extended a detainee's confinement after the court had ordered his release. The court divided the reasons for extended confinement into two categories of delays caused by: (1) administrative steps incident to release ("administrative delays"); and (2) the County's practice of "deferring the commencement of

those steps until the [County had] updated its database of wants and holds" ("investigative

delays"). *Id* at \*3. The court determined that the detention due to investigative delays

constituted a seizure and was governed by the Fourth Amendment. *Id* at \*\*32-33. It explained

that these investigative delays:

> restrict the liberty of individuals after a court has either ordered their
> release or concluded that the lawful authority to hold them on the case
> before the court no longer exists. After receiving such an order, the
> [county] may no longer treat the individual as a pretrial detainee, but as a
> former detainee, over whom the [county's] authority extends no further
> than necessary to execute the court's order directing release. The force of
> a court order negating the lawful authority to hold an individual requires
> that any continued detention beyond the period necessary to execute the
> order be analyzed as a new arrest under the Fourth Amendment.

*Id* at \*\*50-51.

Likewise here, the judge ordered the pre-trial release of Miranda-Olivares at the

arraignment upon posting of bail. It is undisputed that she could and would have posted bail but

for the County's custom and practice of continued detention upon receipt of the ICE detainer.

Both at the arraignment (had bail been posted) and upon resolution of her state charges, the

County no longer had probable cause to justify her detention. As in *Vanke*, the continued

detention exceeded the scope of the Jail's lawful authority over the released detainee, constituted

a new arrest, and must be analyzed under the Fourth Amendment.

Even *Pierce*, on which the County relies, recognized that the Fourth Amendment's

protection is triggered by a subsequent seizure by characterizing it as a new "initial" seizure

within the traditional bounds of Fourth Amendment protections. *Pierce*, 76 F3d at 1043. The

Ninth Circuit reversed the trial court's directed verdict for the defendant based on the fact that

the jail had seized her during the process of her release. "[A] reasonable jury could find that

although Pierce was still physically inside the detention center, she had been 'released' because

[the jail] had indicated that Pierce was free to go and by implication that the officer lacked any further authority to detain her." *Id.*

The County also argues that the Jail never effectively "released" Miranda-Olivares because a seizure can only occur after a person is physically released from custody and taken back into custody. In support, it cites *Green v. Baca*, 306 F Supp2d 903, 909 n35 (CD Cal 2004), which rejected the theory of a "constructive re-seizure" when the plaintiff's release was delayed due to the county not receiving the release order. This argument again reflects the County's misreading of Miranda-Olivares's claim as based on a theory of prolonged detention based on the initial seizure instead of detention based on a new seizure. *Green* falls into the group of cases described in *Vanke* as "administrative delays" because the plaintiff alleged a violation based on his "overdetention" or "excessive custody" springing from an existing probable cause determination. Unlike the County's reliance on the issuance of the ICE detainer, there were no new grounds for arrest in *Green*. *See id* (the jail held Green under California Penal Code § 3056: "Prisoners on parole shall remain under the legal custody of the department and shall be subject at any time to be taken back within the inclosure [*sic*] of the prison."). Moreover, had Miranda-Olivares posted bail and attempted to walk out of the Jail, it is undisputed that the County would have followed its custom and practice of complying with the ICE detainer and taken her back into custody. To adopt the County's position is to elevate form over substance.

Thus, the Fourth Amendment applies to County's detention of Miranda-Olivares after she was entitled to pre-trial release on bail and again after she was entitled to release after resolution of her state charges. In order for the County to hold a person beyond the period necessary to execute an order of legal authority to continue detention, it must meet the clearly defined

reasonable seizure standards of the Fourth Amendment. *See Vanke*, 1998 US Dist LEXIS 23488, at *51. The Fourth Amendment requires that seizures be objectively reasonable in light of the facts and circumstances. *Graham v. Connor*, 490 US 386, 397 (1989) (citation omitted). Prolonged detention after a seizure, such as full custodial confinement without a warrant, must be based on probable cause. *United States v. Ayarza*, 874 F2d 647, 650 (9th Cir 1989), citing *Florida v. Royer*, 460 US 491, 503 (1983). Absent probable cause, that detention was unlawful.

Miranda-Olivares was not charged with a federal crime and was not subject to a warrant for arrest or order of removal or deportation by ICE. The County admits that Miranda-Olivares was held past the time she could have posted bail and after her state charges were resolved based exclusively on the ICE detainer. But the ICE detainer alone did not demonstrate probable cause to hold Miranda-Olivares. It stated only that an investigation "has been initiated" to determine whether she was subject to removal from the United States. *See Arizona*, 132 S Ct at 2509 ("Detaining individuals solely to verify their immigration status would raise constitutional concerns."). The ICE detainer's stated purpose of requesting the Jail to hold Miranda-Olivares custody was "to provide adequate time for [ICE] to assume custody" of her. Therefore, it was not reasonable for the Jail to believe it had probable cause to detain Miranda-Olivares based on the box checked on the ICE detainer.

There is no genuine dispute of material fact that the County maintains a custom or practice in violation of the Fourth Amendment to detain individuals over whom the County no longer has legal authority based only on an ICE detainer which provides no probable cause for detention. That custom and practice violated Miranda-Olivares's Fourth Amendment rights by detaining her without probable cause both after she was eligible for pre-trial release upon posting

bail and after her release from state charges.  Thus, Miranda-Olivares is granted summary judgment as to liability on the Second Claim.

## II.    False Imprisonment Claim (Third Claim)

The County seeks summary judgment against the Third Claim for false imprisonment. Under Oregon law, a claim of false imprisonment requires proof of four elements:  (1) the defendant confined the plaintiff; (2) the defendant intended the act that caused the confinement; (3) the plaintiff was aware of the confinement; and (4) the confinement was unlawful.  *Ross v. City of Eugene*, 151 Or App 656, 663, 950 P2d 372, 375 (1997).  The County does not dispute that Miranda-Olivares satisfied the first three elements, but contends that she cannot prevail because her confinement was lawful under 8 CFR § 287.7.

It is the defendant's burden to prove that the plaintiff's imprisonment was lawful.  *Id*; *Carr v. City of Hillsboro*, 497 F Supp2d 1197, 1211 (D Or 2007).  As explained above, the County cannot meet that burden because its detention of Miranda-Olivares was not authorized by the Fourth Amendment.  However, the Oregon Tort Claims Act provides immunity for public bodies and their officers from state law claims:

> arising out of an act done or omitted under the apparent authority of law, resolution, rule or regulation that is unconstitutional, invalid or inapplicable except to the extent that they would have been liable had the law, resolution, rule or regulation been constitutional, valid, and applicable, unless such act was done or omitted in bad faith or malice.

ORS 30.265(6)(f).

Here the County was acting pursuant to an ICE detainer and federal regulation under an erroneous belief that they provided the apparent authority to detain Miranda-Olivares.  There is no contention or evidence that the County was acting in bad faith or with malice.  *See Elvrum v. Fish Comm'n*, 14 Or App 1, 6, 510 P2d 593, 596 (1973) (finding that the Oregon Fish Commission was immune from suit when taking action after seeking a legal opinion).

Addressing this same issue, the Multnomah County Circuit Court recently dismissed a false imprisonment claim based on defendant's compliance with an ICE detainer issued pursuant to 8 CFR § 287.7. *Cruz v. Multnomah Cnty. Sheriff's Office*, Multnomah County Circuit Court Case. No. 1209-11181 (Aug. 1, 2013) (Ciecko Decl., Ex. A). After discussing the validity of the regulation, the court ultimately concluded that it did not need to construe the regulation because the defendant was immune from suit pursuant to ORS 30.265(6)(f). "Regardless of how a court might construe the regulation, it is clear that when defendants held plaintiff in custody after his arraignment, they did so under the authority of what appeared to be a mandatory directive from federal authorities." *Id* at *8. For the same reason, the County is entitled to summary judgment on the Third Claim.

## ORDER

For the reasons set forth above, the County's Motion for Summary Judgment (docket #17) is granted as to the First and Third Claims and denied as to the Second Claim, and Miranda-Olivares's Motion for Partial Summary Judgment (docket #23) is granted as to liability on the Second Claim and denied as to the First Claim. As a result, the only issue remaining for trial is the amount of damages Miranda-Olivares is entitled to receive for the County's violation of her Fourth Amendment rights.

DATED April 11, 2014.


s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge