UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MARIA MIRANDA-OLIVARES,

        Plaintiff,

   v.

CLACKAMAS COUNTY,

        Defendant.

Case No. 3:12-cv-02317-ST

**OPINION AND ORDER**

**STEWART, Magistrate Judge:**

## INTRODUCTION

Plaintiff, Maria Miranda-Olivares, filed this action against defendant, Clackamas County ("County"), to challenge her confinement by the County from March 15 through March 30, 2012, based solely on a federal immigration detainer (Form I-247) issued by the United States Immigration and Customs Enforcement ("ICE"), an agency under the Department of Homeland Security ("DHS"). Based on her allegedly unlawful detention, plaintiff alleged that the County unlawfully deprived her of liberty without due process under the Fourteenth Amendment (First Claim) and her right to be free from unreasonable seizure under the Fourth Amendment (Second Claim) and also falsely imprisoned her in violation of Oregon law (Third Claim). On cross-motions for summary judgment, this court determined that plaintiff's imprisonment with

1 – OPINION AND ORDER

probable cause based on "investigatory" ICE detainers violated the Fourth Amendment (docket #42).

Two weeks prior to the date for trial on the remaining issue of plaintiff's damages, the County made an Offer of Judgment of $30,100.00 plus reasonable attorney fees accrued as of April 20, 2015. After plaintiff accepted that offer on May 4 (docket #122), the Court entered judgment in plaintiff's favor on May 5, 2015 (docket #124). Pursuant to the terms of the Offer of Judgment and as the prevailing party under 42 USC § 1983, plaintiff has filed a Motion for Attorney Fees and Costs in the sum of $124,944.04 (docket #133). In addition, plaintiff has filed a Motion to Strike Portions of and to Place Under Seal Defendant's Filings that Breach Settlement Conference Privilege (docket #158). For the reasons set forth below, the motion to strike or seal is denied, and plaintiff is awarded attorney fees in the reduced sum of $94,531.70 and costs in the sum of $2,841.44, for a total of $97,373.14.

## DISCUSSION

**I.     Motion to Strike/Seal**

In response to plaintiff's motion, the County has disclosed a verbal offer of settlement made to plaintiff during a judicial settlement conference on October 1, 2014, as well as subsequent communications relating to that offer. Contending that these communications are inadmissible under FRE 408[1] and LR 16-4(g),[2] plaintiff seeks to either strike them or place them under seal.

The County offers the communications to show that plaintiff rejected a settlement offer in October 2014 that was essentially identical to the offer she accepted in April 2015, thus

---

[1] FRE 408 states that evidence of settlement offers is "not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."

[2] LR 16-4(g) states that communications made during ADR proceedings are privileged "unless otherwise authorized by the Federal Rules of Evidence."

demonstrating that her attorneys failed to improve her position in any meaningful way. For that purpose, neither FRE 408 nor LR 16-4(g) renders the communications inadmissible.

In the Ninth Circuit, a trial judge is permitted to consider settlement negotiations in determining a reasonable amount of attorney fees. In *Ingram v. Oroudjian*, 647 F3d 925 (9th Cir 2011), the trial court reduced the plaintiff's requested attorney fees based largely on the plaintiff's limited success in light of the settlement offers made by the defendant and rejected by the plaintiff. In affirming that reduction, the Ninth Circuit followed the approach taken by the Third, Seventh, and Eighth Circuits (as well as the Fourth, Sixth, and Tenth Circuits) and held that "the district court did not err by considering settlement negotiations for the purpose of deciding a reasonable attorney fee award in this case." *Id* at 927.

Moreover, a trial court commits plain and reversible error by concluding that it cannot consider settlement offers in making such a determination. In *In re Kekauoha-Alisa v. Ameriquest Mortg. Co.*, 674 F3d 1083 (9th Cir 2012), the Ninth Circuit reversed a trial court ruling "that it was prohibited from admitting evidence of the settlement offer by Federal Rule of Evidence Rule 408" when considering a request for attorney fees. *Id* at 1094. Citing *Ingram*, the court stated that for the purposes of determining a reasonable amount of attorney fees, "it is now clear that this evidence [of settlement negotiations] is admissible." *Id*. It again reversed a trial court for that same reason in *A.D. v. Cal. Highway Patrol*, 712 F3d 446 (9th Cir 2013), explaining:

> The reasonableness of the [attorney] fee is determined primarily by reference to the level of success achieved by the plaintiff. In evaluating the plaintiffs' level of success, district courts should consider two questions: First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

3 – OPINION AND ORDER

*Id* at 460 (citations and internal quotations omitted).

In analyzing the second question, the court confirmed that "[u]nder the law now in effect, Federal Rule of Evidence 408 does not bar district courts in the Ninth Circuit from considering amounts discussed in settlement negotiations as evidence of the extent of the plaintiff's success." *Id* at 460-61, citing *In re Kekauoha-Alisa*, 674 F3d at 1093-94, and *Ingram*, 647 F3d at 927.

Therefore, plaintiff's motion to strike or seal the County's references to the settlement negotiations is denied.

## II. <u>Attorney Fees</u>

### A. <u>Legal Standard</u>

Attorney fees for the prevailing party in fee-shifting claims are calculated using the lodestar figure which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Miller v. Los Angeles Cnty. Bd. of Educ.*, 827 F2d 617, 621 (9th Cir 1987) (internal quotation marks and citation omitted). There is a strong presumption that the lodestar amount is reasonable. *Jordan v. Multnomah Cnty.*, 815 F2d 1258, 1262 (9th Cir 1987). In calculating the lodestar, the court must consider those factors identified in *Kerr v. Screen Extras Guild, Inc.*, 526 F2d 67 (9th Cir 1975), which have now been subsumed within the initial calculation. *Cunningham v. Cnty. of Los Angeles,* 879 F2d 481, 487 (9th Cir 1988). Subsumed factors include: (1) novelty and complexity of the issues; (2) special skill and experience of counsel; (3) quality of the representation; (4) the results obtained; and (5) the superior performance of counsel. After calculating the lodestar, the fee may be adjusted by any nonsubsumed factors identified in *Kerr*.

David Henretty, assisted by Arthur Schmidt, represented plaintiff from July 11, 2012, until his motion to withdraw was granted on June 9, 2014, about two months after obtaining

summary judgment on the issue of liability. Plaintiff then represented herself until Benjamin Haile of the Portland Law Collective ("PLC") appeared as her counsel on November 12, 2014, with Francis Nevill joining as co-counsel on February 24, 2015. Plaintiff seeks to recover attorney fees for these attorneys calculated as follows:

|  | RATE | HOURS | TOTAL |
|---|---|---|---|
| David Henretty | $300 | 184.5 | $55,350 |
| Arthur Schmidt | $350 | 17.4 | $6,090 |
| Benjamin Haile | $304 | 104.3 | $31,707.20 |
| Francie Nevill | $201 | 127.4 | $25,607.40 |
| Staff Support | $90 | 37.2 | $3,348 |
| Costs and Non-Taxable Expenses |  |  | $2,841.44 |
| **TOTAL** |  | 470.8 | $124,944.04 |

The County does not contest the hourly rates sought by plaintiff's legal team, but objects to the number of hours incurred for various reasons, each of which is discussed below.

B.      **Reasonable Number of Hours**

Plaintiff argues that the number of hours expended on this case is reasonable given the tasks each attorney was required to complete; plaintiff's limited English proficiency; the novelty and difficulty of the area of law; the complex legal arguments raised by the County's pretrial filings; the unavoidable process of getting plaintiff's new counsel up to speed on the case; and the County's opposition to a short continuance of the trial, which led to a long continuance and required the PLC attorneys to review some portions of trial preparation more than once. Plaintiff also points to her excellent result, despite the undesirability of her case due to an unsettled area of law and a substantial risk of jury prejudice.

The County disagrees and makes a number of specific objections based on the billing records of plaintiff's attorneys. In considering these objections, the court has not relied on Exhibit 102, a draft of the time records submitted by the PLC attorneys during settlement

negotiations which contain minor, but significant, inaccuracies.  Haile Reply Decl. (docket #155), ¶¶ 1-2; Nevill Reply Decl. (docket #156), ¶ 1.

### 1. **Henretty**

Mr. Henretty performed more than 235 hours of legal services over 23 months, but deducted over 50 hours to arrive at his figure of 184.5 hours.  Mr. Henretty consulted with Arthur Schmidt who incurred another 17.5 hours.  The County agrees that Mr. Henretty performed valuable work for plaintiff by drafting pleadings, conducting discovery, and obtaining a very good result on summary judgment in an evolving and highly specialized area of the law.  However, the County does challenge specific billing entries.

First, the County challenges as excessive 29.9 hours from December 9, 2013, to February 10, 2014, spent by Mr. Henretty practicing and preparing for the two hour oral argument on the cross-motions for summary judgment.  Amended Ciecko Decl. (docket #152), Ex. 101.  This time also includes two separate moot courts.  In support, the County points to the declaration of Beth Creighton submitted by plaintiff stating, "Normally, if one were to practice for oral argument, I would expect no more than 3 hours of practice time for a summary judgment oral argument that lasted 2 hours."  Creighton Decl. (docket #138), ¶ 34.  It also notes that the County's attorney spent approximately five hours preparing for the same oral argument.  Ciecko Amended Decl. (docket #152), ¶ 4.

Plaintiff submits that the County misreads Ms. Creighton's declaration.  Although noting "that Mr. Henretty spent a total of 29.1 hours[3] preparing for summary judgment and oral argument," Ms. Creighton also stated that he spent 7.6 hours "'practicing for oral argument' or doing the 'moot courts.'"  Creighton Decl., ¶ 34.  Therefore, when she referred to "practice

---

[3] No explanation has been given for the difference between the County's total of 29.9 hours and Ms. Creighton's total of 29.1 hours.

time," she meant the 7.6 hours of practice for the argument, not the entire 29.1 hours which include reviewing the case law and researching issues. Thus, at best, Ms. Creighton proposes a reduction of only 4.6 hours (7.6 – 3 = 4.6). Plaintiff's interpretation of Ms. Creighton's opinion appears to be correct. Nonetheless, Ms. Creighton does not state that all 29.1 hours to prepare for the oral argument was reasonable, and this court concludes that it was not reasonable. After spending 62.3 hours to research and write the cross-motions for summary judgment (Creighton Decl., ¶ 32), it should not have taken Mr. Henretty another 29.1 (or 29.9) hours to prepare for the oral argument. To the contrary, the five hours spent by opposing counsel is more reasonable. Accordingly, Mr. Henretty's time is reduced by 24.1 hours.

The County next challenges 20.7 hours in 88 billing entries as lacking sufficient detail to be assessed for reasonableness. However, these entries are primarily of a short duration of .1 or .2 hour for telephone calls or emails to or from plaintiff or opposing counsel "re: case" over a period of nearly two years.[4] Under the circumstances, the total number of hours spent by Mr. Henretty communicating with his client and opposing counsel is not unreasonable.

The County also characterizes 1.9 hours spent by Mr. Henretty as clerical tasks. "Costs associated with clerical tasks are typically considered overhead expenses reflected in an attorney's hourly billing rate, and are not properly reimbursable." *Salinas v. Beef Nw. Feeders, LLC,* No. CV-08-1514-PK, 2010 WL 1027529, at *4 (D Or Mar. 1, 2010), citing *Missouri v. Jenkins*, 491 US 274, 288 n10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal [or lawyer's] rate, regardless of who performs them . . . [the] dollar value [of a clerical task] is not enhanced just because a lawyer does it") (citation omitted). The 1.9 hours includes entries for work on an acceptance of service of the Complaint, telephone calls to court

---

[4] Mr. Henretty's billing entries in this regard are no more lacking in detail than similar entries by the County's counsel. Haile Reply Decl., ¶ 12 & Ex. 1.

7 – OPINION AND ORDER

staff regarding a scheduling conference, a cover letter to opposing counsel, and requesting records from a third party. This court agrees that these are clerical tasks that should not be charged at the hourly rate of an attorney.

Finally, the County challenges 9.9 hours spent by Mr. Henretty to "review" the County's initial motion for summary judgment as excessive. The County's memorandum was about 32 pages long. In contrast, the County points out that Mr. Henretty spent only 1.2 hours reviewing the County's response/reply despite the fact that it was about three pages longer. However, a closer scrutiny of these time entries reveals that they are not simply to read the motion, but also included research regarding the various issues raised by the motion. For example, the 10/16/2013 entry for 2.5 hour includes 2.0 hours to "research cases cited," and the 10/22/2013 entry for 2.5 hours includes 2.0 hours for "4th Amend. applicability." According to Ms. Creighton, the total time of 62.3 hours spent by Mr. Henretty to research and brief the cross-summary judgment motions is "squarely within" the usual time spent on summary judgment in a civil rights case of 40-80 hours. Creighton Decl, ¶ 33. Given that the 62.3 hours includes the 9.9 hours challenged by the County, no reduction is required for that reason.

Accordingly, the number of hours charged by Mr. Henretty is reduced by 26 (24.1 + 1.9) hours from 184.5 hours to 158.5 hours.

### 2. Schmidt

The County also objects to the 17.4 hours sought by Mr. Schmidt because he never appeared in this case or filed any pleadings. Mr. Schmidt states that he was "one of the attorneys who represented plaintiff in this action up to June 7, 2014," but does not otherwise explain or clarify his role. Schmidt Decl., ¶ 1. It is noteworthy that in his declaration, Mr. Henretty does not mention Mr. Schmidt, stating only that he "spent time discussing [the] parties' arguments

with co-counsel Steve Walters" and referring to attorney Ed Johnson in one of his billing entries. Henretty Decl., ¶ 11 & Ex. 1, p. 6 (12/9/13 billing entry). The County also complains that his billing entries on his log are largely duplicative of the work performed by Mr. Henretty, including 6.5 hours to draft and edit plaintiff's motion for summary judgment and 8.7 hours to prepare for and participate in moot courts, and contain no description of why his work was reasonable or necessary.

In contrast to Mr. Henretty who graduated from law school in 1999 and has devoted his career to representing low-income clients in a variety of civil cases, Mr. Schmidt graduated from law school in 1980 and has substantial experience in litigating civil rights cases. Attorneys who lack expertise in a certain areas often seek the advice of more experienced attorneys, and it appears from Mr. Schmidt's billing entries that Mr. Henretty consulted him in that capacity. As this court has explained, a "party is certainly free to hire and pay as many lawyers as it wishes, but cannot expect to shift the cost of any redundancies to its opponent." *Pollard v. City of Portland*, No. CV-01-114-ST, 2001 WL 34042624, at *5 (D Or Aug. 7, 2001). No matter how helpful Mr. Schmidt may have been to Mr. Henretty, it is far from clear that plaintiff actually hired Mr. Schmidt. The County is not required to pay for Mr. Henretty to obtain advice from another attorney who did not formally appear on behalf of plaintiff, represent her in any communications with the County, or even bill her for his time. In any event, this court agrees with the County that Mr. Schmidt's time is largely duplicative of Mr. Henretty's work. Therefore, the 17.4 hours sought by Mr. Schmidt is deducted.

///

///

///

### 3. PLC Attorneys

#### a. Degree of Success

The County objects to 231.7 hours billed by the PLC attorneys (totaling nearly $60,000) over a six month period as excessive. Unlike Mr. Henretty, they did not conduct discovery, participate in the lengthy and complex summary judgment motions, take the case to trial, or ultimately improve their client's position. Instead, the PLC attorneys took over a case where the complex issues of liability were already resolved in plaintiff's favor and only needed to prove the amount of her damages at trial. Accordingly, the County seeks a reduction of over 100 hours down to 130 hours split between Mr. Haile and Ms. Nevill.

In particular, the County argues that the eighth *Kerr* factor, which requires the court to consider the amounts involved and the results obtained, weighs against an award of significant attorney fees to the PLC attorneys who could have settled this case without billing over 200 hours over six months. On May 6, 2014, the County presented a written offer pursuant to FRCP 68 to plaintiff to settle the case for $20,100 plus reasonable attorney fees. Ciecko Amended Decl., ¶ 6. Plaintiff rejected that offer. *Id*. Mr. Henretty then withdrew. While plaintiff was representing herself, Judge John Jelderks held a settlement conference on October 1, 2014 (docket #65). At that time, the County apparently made a settlement offer to plaintiff of $30,000 plus reasonable attorney fees which she rejected. *Id*, ¶ 7.

On or about October 16, 2014, after the first pretrial conference (docket #71) and a telephone conference to reset the trial date at plaintiff's request (docket #75), the County made that same offer again to plaintiff. *Id*, ¶ 8. The PLC began representing plaintiff in November 2014 (docket #80), and the trial date was again reset at plaintiff's request (docket #85). On April 20, 2015, a few days after the second pretrial conference (docket #120), the County made a

written offer to allow judgment pursuant to FRCP 68 for $30,100 plus reasonable attorney fees up to that date. *Id*, ¶ 10. After demanding $90,000 in damages plus attorney fees (*id*, ¶ 13), plaintiff accepted that offer on May 4, 2015 (docket #122). *Id*  Because $30,000 was available to plaintiff at all times after October 1, 2014, to settle this case, the County contends that the PLC attorneys failed to succeed in any measurable way and are simply attempting to share the credit with Mr. Henretty for plaintiff's success.

However, the measure of success is what the plaintiff achieved in the case as a whole, not what her individual attorneys achieved in separate stages of the case. Although liability was determined by summary judgment before the PLC attorneys became involved, the damages phase of the case remained. The issue is whether the time spent by the PLC attorneys was necessary and reasonable to prepare for a jury trial on damages and ultimately to persuade plaintiff to settle for the amount of the County's offer. In the end, plaintiff obtained an award of $30,100.00 which, contrary to the County's characterization, is not a nominal damages award.

With respect to settlement, the PLC attorneys did not significantly improve the amount offered to plaintiff between October 2014 and April 2015. On the other hand, based on this court's interaction with plaintiff while she was representing herself, it was apparent that plaintiff had difficulty communicating in English, did not fully understand the legal system, was very emotional, and had no interest in settling her case. As she now explains, discussing settlement "was difficult" for her because her "top priority has always been to prevent other people from being incarcerated illegally the way [she] was" and she "was hesitant to let the case be settled for any amount of money out of concern about undermining the effects of the case." Miranda-Olivares Decl. (docket #162), ¶ 3. Although both Judge Jelderks and Mr. Henretty failed to persuade plaintiff to settle, the PLC attorneys succeeded, much to their credit. Had plaintiff

taken this case to trial without the assistance of the PLC attorneys, she likely would have been awarded much less than the amount of the settlement she finally accepted.

In addition, the PLC attorneys accepted a significant risk by agreeing to represent an unrepresented client very close to the scheduled trial date.  Although they immediately requested a continuance of the trial date, they had to quickly familiarize themselves with the case and the remaining issues for trial in the event that request was denied.  In addition, in order to prepare for the jury trial, the PLC attorneys were required to investigate factual issues concerning plaintiff's alleged damages, including her inability to see her own doctor, the conditions of suicide watch, and the circumstances of her sister's telephone call regarding bail.  Moreover, the PLC attorneys were required to respond to several legal arguments made by the County as to causation and the duration of plaintiff's unlawful imprisonment.  They also sought to exclude or include certain evidence, including plaintiff immigration status, whether plaintiff was taken into ICE custody, various child custody issues, plaintiff's inability to see her own doctor, and the conditions of suicide watch.  By prevailing on many of these issues at the second pretrial conference, the PLC attorneys significantly improved plaintiff's position as compared to her position after the initial pretrial conference.

As another basis to challenge the overall number of hours as excessive, the County submits the opinion of an experienced trial attorney, Darian Stanford, that the award of $57,315 sought by the PLC attorneys "seems excessive when compared to a requested award of $61,620 by attorneys Henretty and Schmidt, given the respective amount and nature of the work performed by each" and "when compared to the 82.4 hours of work billed by County counsel Ciecko for the same period."  Stanford Amended Decl. (docket #151), ¶¶ 10(a) & (b), 19.  Based

on his review and experience, he believes that any award should not exceed 110 hours by the PLC attorneys, totaling $27,260.

However, Mr. Stanford's opinion is based on his review of only the fee petition filings and the case docket report and on his communications with the County's attorney "about the nature and nuances of the case." *Id*, ¶ 9. He did not review any other documents and appears to be under the erroneous impression that all of the complex issues were resolved at summary judgment. *Id*, ¶ 13. As discussed above, the preparation for trial on damages involved more factual and legal issues than he may have been led to believe. In contrast, before rendering her opinion, Ms. Creighton reviewed not only the fee petition filings, but all of the summary judgment and pretrial filings. Creighton Decl., ¶¶ 25-26, 29, 31.

In addition, a comparison between the hours spent by the PLC attorneys and by the County's counsel during the same time period is misleading. It fails to account for the extra work required to represent plaintiff, as opposed to the County. Not only did the PLC attorneys have to do extensive legal research to respond to the legal arguments raised by the County, they also had more witnesses to prepare for trial, some of whom spoke little English. That being said, Mr. Stanford does present a useful comparison between the 150 hours he spent to prepare a complex case that he accepted approximately a month prior to trial. Stanford Amended Decl., ¶¶ 16-17. He recognizes "the inherent complexity and difficulties associated with attempting to compare cases," but present "enough similarities to make the comparison probative" and to support his opinion. *Id*, ¶ 18. Therefore, this court gives Mr. Stanford's opinion some, but not controlling, weight.

Although this court declines to reduce the amount sought by the PLC attorneys based solely on the degree of success obtained, a reduction for other reasons is warranted, as discussed below.

### a. Prefiling Hours

The County objects to the 11.8 hours spent by Mr. Haile between October 10 and November 12, 2014, when he filed an appearance. During that month, Mr. Haile became familiar with the case by reviewing various filings and other documents and deciding whether to accept the case. The County contends that this work duplicated Mr. Henretty's work and was necessary only because plaintiff discharged Mr. Henretty (docket #48). That is true. Plaintiff cannot shift attorney fees to the County for the extra work required as a result of her decision to change attorneys. Therefore, the attorney fee award is reduced by 11.8 hours for Mr. Haile.

### b. Duplicative Billing

The County has identified approximately 80 duplicative billing entries for multiple attorneys and staff performing the same task, totaling 58.4 hours for Mr. Haile and Ms. Nevill and 13.9 hours for staff. A prevailing party must "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 US 424, 434 (1983). This is especially true when more than one attorney provides legal services to a client.

> When attorneys hold a telephone or personal conference, good "billing judgment" mandates that only one attorney should bill that conference to the client, not both attorneys. The same good "billing judgment" requires attorneys not to bill for more than two attorneys to review pleadings or to attend oral argument.

*Nat'l Warranty Ins. Co. v. Greenfield*, No. CV-97-1654-ST, 2001 WL 34045734, at *5 (D Or Feb. 8, 2001).

Based on a careful review of the billing entries at issue, deductions for unnecessarily duplicative time for intra-office meetings is required.  However, the County has not correctly calculated the number of duplicative hours.  Instead, the total time billed by both attorneys for communications between them, as correctly calculated by Ms. Nevill, is 22.8 hours.[5]  Nevill Reply Decl., ¶¶ 9-10 & Ex. 1.  To correct for this duplication by two attorneys, the higher billing rate of the two attorneys should be allowed.  *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F Supp2d 1228, 1253 (D Or 2013).  Thus, the time is awarded to Mr. Haile, but 22.8 hours is deducted for Ms. Nevill.

The PLC attorneys neither address nor provide any similar explanations for the multiple conferences with staff.  Since it appears that all of the conferences were also attended by Mr. Haile and/or Ms. Nevill and that an award of time for each of these conferences is allowed either for Mr. Haile or Ms. Nevill.  However, of the 13.9 hours listed by the County as duplicative, 3.0 hours billed by "SL" on March 20, 2015, consists of other work properly billed by staff.  Therefore, the proper reduction for duplicative hours by staff is 10.9 hours.

### c.     Unrelated Hours

The County seeks a further reduction for both Mr. Haile and Ms. Nevill to bill 2.0 hours on April 7, 2015, to observe the County's attorney in a separate and related trial.  No explanation is offered as to why this observation was reasonable or necessary to prosecute this case.  In addition to being duplicative, it is not reasonable to shift this cost to the County.  Therefore, these hours are deducted.

///

///

---

[5] Although Ms. Nevill states that the total is 21.7 hours, the actual total is 22.8 hours after correcting for three typographical errors in the last column.  In the last column, the 2/12/15 and 2/24/15 billing entries should each be .3, not .2, and the 3/19/15 billing entry should be 1.0, not .1.

### d.      Impermissibly Vague Entries

The County objects to many billing entries as too vague to assess their reasonableness due to a lack of explanation as to why the time was reasonable or necessary or due to redactions. In response, both Mr. Haile and Ms. Nevill have submitted their declarations which provide adequate explanations for each of the allegedly vague billing entries and also submitted their unredacted billing entries to the court for *in camera* review.  Haile Reply. Decl., ¶ 10; Nevill Reply Decl., ¶ 8.  Based on this court's review of those explanations and redactions, none of the billing entries is impermissibly vague.

In addition to vagueness, the County complains that Ms. Nevill's 5.0 hours incurred on March, 30, 2015, to prepare for the pretrial conference was unreasonable since she was not the attorney handling the pretrial conference.  It is not unreasonable for Ms. Nevill to assist Mr. Haile in preparing for the pretrial conference.  On the other hand, in addition to Mr. Nevill's time, Mr. Haile spent another 11.1 hours on April 15-17, 2015, preparing for the pretrial conference.  Spending a total of over 16 hours to prepare for a short pretrial conference is clearly excessive.  Therefore, both attorneys' time is reduced by half (from 5.0 to 2.5 hours for Ms. Nevill and 11.1 to 5.6 hours for Mr. Haile).

The County further takes issue with Mr. Haile billing 3.5 hours to correct the translation of plaintiff's handwritten jail dairy, especially since the PLC attorneys also seek to recover $711.40 paid for an Oregon Certified Interpreter who translated the same diary.  Haile Decl. (docket #134), Ex. 103.  In response, Mr. Haile explains that he sought a new translation when the original translation of plaintiff's diary was unavailable for trial and the County declined to stipulate to the use of a translation as an exhibit without a foundation by the translator.  Haile Reply Decl., ¶ 13.  Based on his proficiency in Spanish and "understanding of the facts of the

case and the issues the jury would be asked to decide," his review of the new translation revealed extensive errors on almost every page of the court-certified translation, resulting in a total of 30 corrections approved by the translator. *Id*. Although Mr. Haile's translation work was useful, the issue is whether it was necessary for him to charge an attorney's hourly rate of $304 to do it. Few of his corrections actually changed the meaning of plaintiff's words, and none required any intimate knowledge of the facts of this case. The County should only have to pay for one translation. To charge the County an extra $1,064.00 for Mr. Haile to correct the court-certified translation is simply not reasonable. Therefore, Mr. Haile's time of 3.5 hours incurred to correct the translation of plaintiff's diary is deducted.

### e. **Excessive Hours**

The County asserts that the PLC attorneys spent an unreasonable and excessive amount of time drafting their trial memorandum and witness statements that would never be seen by the jury and required no decisions by the court. According to the County, that time totals 26.6 hours (9.9 hours by Mr. Haile and 16.7 hours by Ms. Nevill) and should be reduced to 5.0 hours for the trial memorandum (Stanford Amended Decl., ¶ 24) and 3.0 hours for the witness statements.

Plaintiff's trial memorandum was 16 pages long and covered six items of damages not specifically described prior to the Joint Statement of Trial issues, as well as eight legal issues that remained unresolved following the summary judgment motions and required resolution at the pretrial conference. Given the complexity of the damages issues, the time spent by the PLC attorneys to prepare the trial memorandum was within a reasonable range.

Plaintiff's witness statements were 13 pages long, covering nine witnesses. The bulk (8 pages) covered plaintiff's testimony. Although witness statements may be brief, the Jury Trial Management Order (docket #45, ¶ 7) requires that they "include sufficient information to give

the opposing party and the Court a clear understanding of the content of the testimony," with shorter statements "allowed for witnesses whose depositions have been taken." Since the County had taken plaintiff's deposition on July 9, 2013, the witness statement for plaintiff could have been less thorough. However, it appears that few questions concerning damages had been asked at her deposition. Given that the County benefitted from the detailed witness statements, containing new information, the time spent by the PLC attorneys to prepare them was not unreasonable.

### f.     Clerical Work

The County characterizes 2.3 hours by Mr. Haile and 17.7 hours by Ms. Nevill as clerical tasks that should have been performed by administrative staff. Ms. Nevill concedes that 1.4 hours[6] of her time should be removed from the fee petition as clerical. Nevill Reply Decl., ¶ 8. Based on Ms. Nevill's explanations for the remaining entries, this court agrees and deducts 1.4 hours.

Mr. Haile also has provided explanations for each of his challenged billing entries. Based on those explanations, none of his 2.3 hours is clerical.

### g.     Summary

Based on the above, the number of hours is reduced for the PLC attorneys and staff as follows:

Mr. Haile:  104.3 – 22.8 (11.8 prefiling + 2.0 unrelated + 5.5 pretrial conference + 3.5 translation) = 81.5 hours

Ms. Nevill:  127.4 – 28.7 (22.8 duplicative + 2.0 unrelated + 2.5 vague + 1.4 clerical) = 98.7 hours

Staff:  37.2 – 10.9 (duplicative) = 26.3 hours

---

[6] Although Ms. Nevill refers to 1.3 hours, her concessions in the accompanying table add up to 1.4 hours.

### 4. Total Reductions

Based on the above reductions, the attorney fee award is calculated as follows:

|  | RATE | HOURS | TOTAL |
|---|---|---|---|
| David Henretty | $300 | 158.5 | $47,550.00 |
| Arthur Schmidt | $350 | 0 | $0 |
| Benjamin Haile | $304 | 81.5 | $24,776.00 |
| Francie Nevill | $201 | 98.7 | $19,838.70 |
| Staff Support | $90 | 26.3 | $2,367.00 |
|  |  |  |  |
| **TOTAL** |  |  | $94,531.70 |

## III. Costs

Both sets of plaintiff's attorneys seek reimbursement for costs. Mr. Henretty has submitted a Bill of Costs for $350.00 for the filing fee which is recoverable under 28 USC § 1920. Henretty Decl., Ex. 2. Mr. Henretty also seeks costs as part of the attorney fee award in the sum of $1,325.15, consisting of $20.00 for court and county records, $1,305.15 for four deposition transcripts and reporting fees. *Id*, ¶ 17. Although Mr. Henretty has not submitted any receipts, the County has submitted no objection to any of those costs.

The PLC attorneys seek reimbursement for additional costs as part of the attorney fee award in the sum of $1,166.29, consisting of $411.40 for an expedited transcript of the first pretrial conference, $13.50 for certified copies, $711.40 for the translation of plaintiff's diary, and $29.99 for an index. Haile Decl., ¶ 49 & Ex. 3. The County has submitted no objection to any of these costs.

Since all of these costs appear to be reasonable and necessary, they are allowed. Accordingly, plaintiff is awarded total costs in the sum of $2,841.44.

///

///

## ORDER

For the reasons set forth above, plaintiff's Motion to Strike Portions of and to Place Under Seal Defendant's Flings that Breach Settlement Conference Privilege (docket #158) is DENIED and plaintiff's Motion for Attorney Fees and Costs is GRANTED (docket #133) in the reduced sum of $97,373.14.

DATED  August 28, 2015.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge
